IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUSTY D. SCOTT,<br><br>　　　　Petitioner,<br><br>　v.<br><br>J. MARTIN, Associate Warden,<br><br>　　　　Respondent.　　　　　　　／ | No. C 05-0064 CRB (PR)<br><br>**ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS** |

　　　　Petitioner was convicted on two counts of inflicting corporal injury on a spouse after a court trial in Santa Clara County Superior Court. The court also found true the allegation that petitioner had inflicted great bodily injury with respect to the second count and, on March 28, 2003, sentenced him to four years in state prison.

　　　　On March 26, 2004, the California Court of Appeal affirmed the judgment of the trial court and, on June 9, 2004, the Supreme Court of California denied review. The instant petition for a writ of habeas corpus under 28 U.S.C. § 2254 followed.

　　　　Per order filed on April 15, 2005, the court found that petitioner's claims of ineffective assistance of counsel appeared colorable under § 2254 and ordered respondent to show cause why a writ of habeas corpus should not be granted. Respondent has filed an answer to the order to show cause and petitioner has filed a traverse.

## STATEMENT OF FACTS

The California Court of Appeal summarized the facts of the case as follows:

Allison Doyle met defendant in August of 1999, and they married a month later. Doyle, however, was still married to somebody else at the time and was still receiving spousal support. From the beginning of the relationship, Doyle admitted that her extreme jealousy caused problems in the couple's relationship. The couple lived in separate homes because of relationship problems.

In February of 2000, as defendant and Doyle were preparing for a ski trip, the couple argued because Doyle accuse defendant of seeing another woman. Doyle testified that defendant punched her in the back of the head and on her back, causing her to fall to the ground. While Doyle was on the ground with her hands covering the back of her head, defendant struck Doyle with what she believed was his boot-clad foot, breaking her left hand. X-rays confirmed that the hand was broken and surgery was eventually required to reset the appendage. Doyle admitted that she told various doctors that the hand injury occurred while she was playing soccer or skiing.

On May 18, 2000, Doyle again argued with defendant. Defendant struck Doyle's left eye and forearm, leaving bruises on each area. Photographs of these injuries and a recording of her call to police were presented to the [trier of fact].

On May 20, 2000, Doyle called the police to report that she had received a death threat on her telephone answering machine; a man's voice whispered, "you're going to die." Campbell Police Officer David Carmichael took Doyle's report. Doyle told Officer Carmichael at the time of the report that she suspected that defendant left the message, but denied at trial recognizing the voice on the recording. While Officer Carmichael was taking the report he noticed bruises on Doyle's forearm and her swollen eye. She was reluctant to discuss her injuries, but eventually admitted that defendant had assaulted her two days before. She also described the February injury to her hand. Doyle told Officer Carmichael that she feared that defendant would seek retribution against her if she reported the violent incidents, but accepted an emergency restraining order.

Doyle testified that over the course of her one-year relationship with defendant, he abused her three or four times a month. On cross-examination, however, she claimed that defendant was "beating [her] up daily." She also blamed defendant for her losing custody of her children, but did not explain how this occurred.

**Defendant's Prior Acts of Violence**

Defendant married Annette Scott, a resident of Washington State, in 1987, and they had four children. During an argument in 1989, defendant grabbed Scott's shoulder's and shook her. In early 1990, while defendant and Scott were arguing over her wish to start selling cosmetics, which would require an initial investment of cash, defendant demanded that Scott give him her checkbook. When she refused, defendant grabbed Scott's shoulders, slammed her against a wall four tor six times, then grabbed Scott's head and hit it against the wall. He then threw her onto a couch. After Scott gave defendant the checkbook he had requested, defendant struck Scott on the face.

2

As defendant left the home he told Scott, "I ought to come back and slit your throat." Scott was seven and a half months pregnant at the time.

In 1992, defendant slammed Scott's hand in a door, then shook her. Although defendant physically assaulted Scott six or seven times over the course of their relationship, she reported only two of these incidents to police. Scott refrained from reporting defendant's other acts of violence because she loved him and because she and their four children were financially dependent upon him.

**Defense Evidence**

Defendant testified that while he and Doyle were preparing for a ski vacation, Doyle flew into a "jealous rage" and hit defendant, but he did not strike back. Because defendant was upset about the argument, he went skiing without Doyle.

Eric Silveira had worked and socialized with defendant for over four years. Silveira met Doyle and found her to be "odd." Once, defendant arrived for a ski trip as planned, except that he did not have Doyle with him. During the ski trip, Doyle constantly called defendant and Silveira on their cell phones, stating that she wanted to go skiing with them, calling Silveira lewd names, and accusing Silveira of having a homosexual relationship with defendant. Doyle did not mention that her hand had been hurt.

When defendant returned home he found telephone messages on his answering machine in which Doyle threatened to hurt herself. The next day, Doyle left defendant a telephone message stating, "Yea it's me, umm, my hand is broken . . . so its going to cost, I mean they're gonna (inaudible) put pins in my hand, just to let you know, Thank you." Doyle admitted leaving such messages, testifying that she had done so to get defendant to call her. The next time defendant saw Doyle she had a splint on her hand. Defendant stated that he did not grab, punch, shove or kick Doyle.

Defendant testified that in May of 2000, while the couple was hiking on a steep hill, Doyle fell into a patch of poison oak. The fall left her with a rash near her eye and on her legs, as well as scratches on her legs. Defendant believed this fall may have caused the injuries the police officer saw.

Defendant admitted that he pushed Annette Scott, causing her to fall against a wall. He did not, however, threaten to slit her throat.

Patricia Yaeger testified that in July of 2001 she reported to police that defendant had chocked her. On that day, Yaeger suffered an epileptic seizure and became combative and confused. Yaeger drove away in defendant's truck with the hood up as defendant [was] yelling for help from the back of the truck. When police responded, Yaeger, in a confused state of mind, told them that defendant had assaulted and restrained her. Defendant was charged with misdemeanor battery, and was [acquitted] at a bench trial. Yaeger testified that defendant never struck her.

People v. Scott, No. H025792, 2004 Cal. App. Unpub. LEXIS 3255, at **3-8 (Cal. Ct. App. Apr. 8, 2004).

/

3

## DISCUSSION

A.  Standard of Review

A federal writ of habeas corpus may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies that correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.

"[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable. Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

The only definitive source of clearly established federal law under 28 U.S.C § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. Id. at 412; Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003). While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court precedent, only the Supreme Court's holdings are binding on the state courts and only those holdings need be "reasonably" applied. Id.

4

B.   Claims & Analysis

On January 6, 2005, petitioner filed a pro se petition for a writ of habeas corpus under § 2254 alleging three claims of ineffective assistance of counsel. Two months later, on March 25, 2005, he supplemented the petition with an additional allegation of ineffective assistance of counsel. In total, petitioner challenged trial counsel's assistance in four respects: (1) counsel's failure to object to the admission of prior bad acts evidence; (2) counsel's failure to investigate whether the victim's medical records contained evidence that some of her injuries were the result of self-mutilation rather than abuse; (3) counsel's failure to challenge the fact that petitioner was charged and convicted of corporal injury on a spouse, a crime reserved for married and cohabitating adults, despite the fact that petitioner was never legally married to, nor cohabitating with, the alleged victim; and (4) counsel's failure to interview and subpoena important witnesses.[1]

Per order filed on June 14, 2006, the court determined that petitioner's third claim had not yet been exhausted and, pursuant to the law of the circuit, instructed petitioner to inform the court in writing whether he wished to (1) withdraw his unexhausted claim and proceed only with his exhausted claims, (2) dismiss the entire mixed petition and return to federal court with a new petition once all claims are exhausted, or (3) seek a stay of the proceedings under Rhines v. Webber, 125 S. Ct. 1528 (2005). Petitioner elected to dismiss his unexhausted claim and proceed with his three other claims of ineffective assistance of counsel.

In order to prevail on a claim of ineffective assistance of counsel, petitioner must establish two things. First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable

---

[1] Petitioner also raised additional allegations of ineffective assistance of counsel for the first time in his traverse. It is well-established that a traverse is not the proper pleading to raise additional grounds for relief, however. See Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994).

5

1 probability that, but for counsel's unprofessional errors, the result of the proceeding would
2 have been different." Id. at 694.  A reasonable probability is a probability sufficient to
3 undermine the confidence in the outcome.  Id.

To show prejudice under Strickland from failure to file a motion, petitioner must show that (1) had his counsel filed the motion, it is reasonable that the trial court would have granted it as meritorious, and (2) had the motion been granted, it is reasonable that there would have been an outcome more favorable to him.  Wilson v. Henry, 185 F.3d 986, 990 (9th Cir. 1999).

1. Evidence of prior bad acts

Petitioner claims that trial counsel provided ineffective assistance because he failed to object to the testimony of petitioner's former wife, Annette Scott.  Scott testified regarding prior incidents of alleged domestic abuse by petitioner against her.

The record shows that trial counsel objected to the admission of the prior incidents testimony on "relevance" grounds, arguing that the incidents occurred "12 years ago at least." Petitioner nonetheless argues that trial counsel was ineffective because he should have objected specifically on the ground that the evidence was too "remote" from the instant offense to be admissible under California Evidence Code section 1109.

Section 1109(a) reads in relevant part, "in a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other domestic violence is not made inadmissible by Section 1101 if the evidence is not inadmissible pursuant to Section 352."  "Evidence of acts occurring more than ten years before the charged offense is inadmissible under this section, unless the court determines that the admission of this evidence is in the interest of justice."  Cal. Evid. Code § 1109(e). Section 352 reads, "the court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

6

The California Court of Appeal rejected petitioner's ineffective assistance of counsel claim:

> As petitioner points out, Evidence Code section 1109 limits presumptively admissible acts of domestic violence to those which occurred within 10 years of the charged events. The court may, however, determine that acts occurring more than 10 years prior to the charged event are admissible if the interests of justice so require. Here, the prior acts occurred at most less than one year before the 10-year cutoff of presumptive admissibility. The prior acts tend to support the conclusion that defendant may be inclined to engage in periods of violence in his marital relationships.
>
> Defendant offers no compelling evidence that the court did not consider these factors when counsel objected to the relevance of these incidents due to their remote age. Nor does he convincingly argue that the court would not have come to the same conclusion had counsel argued more vehemently. Defendant concedes that Evidence Code section 1108, which permits evidence of prior acts of sexual assault with respect to similar charges, has been analogized to Evidence Code section 1109 by the courts; and that Evidence Code section 352 objections to the remoteness of the prior acts "have rarely been upheld" with respect to Evidence Code section 1108. Defendant even cites cases in which 21-year and 30-year-old-acts were found to be not too remote from the instant charges to render them inadmissible. While the 10-year cutoff of presumptive admissibility was obviously intended by the legislature to provide some guidance as to the remoteness, the fact that the prior acts at hand were hardly outside this limit weighs in favor of their probative value.
>
> We thus find the record does not show that trial counsel performed deficiently in failing to object to the prior acts of domestic violence. The defendant has thus failed to establish his claim that his case was prejudiced by any deficient performance by trial counsel.

People v. Scott, 2004 Cal. App. Unpub. LEXIS 2773, at **10-12.

The California Court of Appeal's rejection of petitioner's claim was not an objectively unreasonable application of Strickland. See 28 U.S.C. § 2254(d); Williams, 529 U.S. at 409. Petitioner has not shown that had his counsel objected more vehemently, or more specifically on remoteness grounds, it is reasonable that the trial court would have sustained the objection as meritorious. See Wilson, 185 F.3d at 990. Nor has he shown that had the objection been sustained, it is reasonable that there would have been an outcome more favorable to him. See id. Petitioner is not entitled to federal habeas relief on this claim.

2. <u>Medical records</u>

Petitioner claims he was prejudiced by trial counsel's failure to obtain both the victim's initial intake records regarding the hand injury and her psychological records. He

7

argues that the hand injury records may have shown that Doyle's hand injury did not occur at the time alleged, and that Doyle may have told medical providers different accounts than those otherwise reflected in the record. Petitioner further argues that Doyle's psychological records would reveal that her injuries were the product of a history of self-mutilation rather than battery by him.

After petitioner's conviction, he learned that trial counsel had been suspended from the practice of law and therefore could no longer represent him. Replacement counsel filed motions for reconsideration and for a new trial based on trial counsel's "incomplete investigation." At the ensuing hearing, replacement counsel and the court recognized that the ultimate issue was the alleged ineffective assistance of trial counsel. Replacement counsel specifically objected to counsel's failure to obtain and review Doyle's emergency medical intake records and to file a motion to review her psychological records. Counsel also requested that the court examine Doyle's records, which were filed under seal at the court after petitioner's trial.

The California Court of Appeal rejected petitioner's ineffective assistance of counsel claim:

> In People v. Reber, [177 Cal. App. 3d 523, 531-32 (1986)], the court held that where a defendant shows good cause for discovery of a victim's psychological records, the Sixth Amendment to the United States Constitution requires in camera review of such records and weighing of the defendant's right to present a defense versus a patient's right of confidentiality of such records. People v. Hammon, [15 Cal. 4th 1117, 1127 (1997)], modified Reber by holding that such discovery may not be obtained pretrial, but rather may be examined during trial when the court is better positioned to determine its relevance.
>
> As discussed above, to prove ineffective assistance of counsel, defendant must show that he was prejudiced by any deficiency in counsel's conduct of the case. Having reviewed Doyle's medical records in camera, we find that these records do not contain the type of evidence suggested by the defendant. The records produced at the trial court did not include records of psychological treatment, or indicia of the cause of the hand injury beyond that otherwise brought into evidence. The claim thus fails.

People v. Scott, 2004 Cal. App. Unpub. LEXIS 2773, at *14.

The California Court of Appeal's rejection of petitioner's claim was not an objectively unreasonable application of Strickland. See 28 U.S.C. § 2254(d); Williams, 529 U.S. at 409.

8

1  After a careful review of the medical records reviewed by the California Court of Appeal, the
2  court is satisfied that the state court's determination that the records did not include records of
3  psychological treatment or indicia of the cause of the hand injury beyond that otherwise
4  brought into evidence was not objectively unreasonable.  It simply cannot be said that there
5  is a reasonable probability that, but for counsel's failure to obtain Doyle's medical records,
6  the result of the proceeding would have been different.  <u>Strickland</u>, 466 U.S. at 694.
7  Petitioner is not entitled to federal habeas relief on this claim

       3.     <u>Interview and subpoena of important witnesses</u>

9         Petitioner claims that counsel was ineffective for failing to interview and
10 subpoena important witnesses.  Although petitioner provides a list of names of so-called
11 "potential witnesses," he has presented no evidence whatsoever showing that they would
12 have been found, would have testified on his behalf, and would have provided useful
13 testimony.  <u>See</u> <u>Wildman v. Johnson</u>, 261 F.3d 832, 839 (9th Cir. 2001) (absence of potential
14 witness declaration rendered ineffective assistance of counsel claim based on failure to call
15 witness speculative); <u>Dows v. Wood</u>, 211 F.3d 480, 486 (9th Cir. 2000) (rejecting ineffective
16 assistance of counsel claim because petitioner provided no evidence that witness would have
17 provided helpful testimony for defense).  Petitioner's mere speculation that one of the listed
18 potential witnesses might have offered helpful testimony if interviewed is not enough to
19 establish ineffective assistance of counsel and obtain federal habeas relief.  <u>See</u> <u>Grisby v.</u>
20 <u>Blodgett</u>, 130 F.3d 365, 373 (9th Cir. 1997) (speculating as to what expert would say is not
21 enough to establish prejudice); <u>Bragg v. Galaza</u>, 242 F.3d 480, 486 (9th Cir. 2000), <u>amended</u>,
22 253 F.3d 1150 (9th Cir. 2001).  Petitioner is not entitled to federal habeas relief on this claim.

## CONCLUSION

24     For the foregoing reasons, the petition for a writ of habeas corpus is DENIED.  The
25 clerk shall enter judgment in favor of respondent and close the file.

26 **IT IS SO ORDERED.**

Dated: August 14, 2006                  
CHARLES  R. BREYER
UNITED STATES DISTRICT JUDGE